138    APPELLATE COURTS OF ILLINOIS.

Hibernian Banking Assn. v. City of Chicago, 178 Ill. App. 138.

---

### Hibernian Banking Association, Appellant, v. City of Chicago, Appellee.

### Gen. No. 16,943.

1. ASSIGNMENTS—*set-off and counterclaims.* Under Practice Act, § 18, providing for the allowance of set-offs against the assignor of a claim before notice is given of the assignment, the debtor cannot set off any demand which he may have against the assignor which was not due at the time of such notice of assignment.

2. CONTRACTS—*liquidated damages.* Where a contract for the construction of a pumping station is canceled by a city before the time limit expires, no liquidated damages for failure to finish the work within such time limit become due.

3. CONTRACTS—*receipts cannot change liability.* No words in a receipt by a city of a notice of assignment of a claim against it can change the law or limit its liability under the law, unless assented to by the assignee.

Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed. Opinion filed March 12, 1913. Rehearing denied April 3, 1913.

MacCHESNEY, BECKER & BRADLEY, for appellant.

EDWARD J. BRUNDAGE and JOHN J. BEILMAN, for appellee; JAMES F. BURNS, of counsel.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

October 1, 1909, Hibernian Banking Association, as assignee of John P. Agnew, sued the City of Chicago for money due it from the city on a certain contract between said city and said Agnew for the construction of the Lawrence avenue pumping station in Chicago. The cause was submitted to the court upon an agreed statement of facts, and the court rendered judgment in favor of appellee and against appellant, the said bank, after refusing to hold as the law of the case certain propositions of appellant.

From the written stipulation of facts it appears that on August 25, 1905, John P. Agnew entered into a contract with the City of Chicago for the construction of a pumping station on Lawrence avenue in said city, the contract price being $173,186. The roof was to be completed on or before December 31, 1905, and the entire building by or before July 31, 1906. If the roof was not completed by December 31, 1905, there was by the terms of the contract to be deducted from the contract price one hundred dollars per day, as ascertained and liquidated damages, for every day after December 31, 1905, that the roof was not fully completed; and if the roof was completed before said date one hundred dollars per day was to be added to the contract price for every day the time for the completion of the roof was shortened. Neither the roof nor the building was completed within the times fixed by the contract. October 1, 1906, the city council of said city passed an order directing the city comptroller to waive the enforcement of any claim for penalties against Agnew for failure to construct

140    APPELLATE COURTS OF ILLINOIS.

Hibernian Banking Assn. v. City of Chicago, 178 Ill. App. 138.

the pumping station within the contract time, and to pay Agnew any and all estimates made for him by the commissioner of public works under said contract. October 8, 1906, the city council passed an order extending the time for the completion of said roof to December 31, 1906, and for the completion of the building to April 1, 1907, in consideration of Agnew's agreement that he would waive all right to any bonus he might have under the original contract, and that in case the entire structure was not completed before April 1, 1907, he would pay the city as liquidated damages one hundred dollars for each and every day the structure remained uncompleted after April 1, 1907, and enter into a new bond of $35,000. March 14, 1907, by authority from the express terms of the contract, the city notified Agnew that it had elected to annual and cancel his contract, because at the rate Agnew was then working he would not complete the station within the contract time, and that he would not be permitted to do any more work on the structure. Under the terms of the contract that monthly estimates should be made by the city and eighty-five per cent. of the value thereof be paid Agnew, and fifteen per cent. retained by the city as a reserve fund to secure it against liens, etc., it is stipulated that up to March 12, 1907, Agnew had been paid upon estimates $136,448.85, and that there was then in the reserve fund $24,079.20; that on October 1, 1906, there was in the reserve fund $22,760.31, and on September 26, 1906, the date of the assignment, about $22,000. The pumping station was completed by James W. Redmond for the contract price of $13,000. The reserve fund of Agnew was then reduced by the payment of the $13,000 to Redmond and by the payment of all other liens until there remained at the beginning of this suit in said reserve fund $1,103.31, which is the sum appellant claims in this suit.

On October 3, 1905, said John P. Agnew entered

into another contract with the City of Chicago to construct an intake tunnel for the Lawrence avenue conduit, being part of section N intercepting sewers in said city, the contract price being $138.33 per lineal foot, the contract to be completed by July 31, 1906. This contract provided that the city should be entitled to one hundred dollars per day, as liquidated damages, for every day after July 31, 1906, that the work remained uncompleted. This contract was not completed within the time limit, and October 1, 1906, by order of the city council the date of completing the contract was changed to May 31, 1907, provided a new bond be filed by the contractor in the sum of $380,000, with sureties to be approved by the Commissioners of Public Works, and that Agnew waive all claim to any bonus under the contract, and provided that Agnew stipulate to pay one hundred dollars per day as liquidated damages for delay after May 31, 1907. Agnew entered into such contract with the city October 2, 1906, changing the date of completion of the intake tunnel to May 31, 1907, etc. March 12, 1907, this contract and the original contract of October 3, 1905, were also annuled by the city before the supplemental contract of October 2, 1906, was completed. The section N contract was relet by the city March 12, 1907, and was completed and accepted by the city before the beginning of this suit, and the city was compelled to pay for its completion approximately $100,000 more than the contract price with Agnew of October 3, 1905. The section N contract contained practically the same provisions for a reserve fund as were contained in the pumping station contract, and on September 26, 1906, when the reserve fund of section N contract was assigned to the appellant, it amounted to about $3,900. No claim is made for this fund by appellant, because the city was compelled to pay it all out and more to complete the work.

On September 18, 1906, said John P. Agnew for a

142    APPELLATE COURTS OF ILLINOIS.

Hibernian Banking Assn. v. City of Chicago, 178 Ill. App. 138.

valuable consideration assigned to appellant any and all claims or demands of himself against the City of Chicago to said sums of money then held by said city as the reserve funds mentioned in both of said contracts, and all other sums which the said city might in the future be owing to said Agnew on said contracts, the appellant assuming no liability for the proper fulfillment of the contracts or either of them. The City of Chicago acknowledged receipt of a copy of said assignment, September 26, 1906, stating in the receipt that its acceptance was not to be construed in any way to prejudice the city's rights.

It was also stipulated that, in case the court found under the law and the stipulated facts that appellant was entitled to recover against appellee, the amount of recovery should be the said sum of $1,103.31.

Appellee insists that the court was right in allowing it to set off its claim for damages against Agnew on the intake tunnel contract against appellant's claim for the balance due it on the pumping station contract. Section 18 of the Practice Act, approved June 3, 1907, provides as follows:

"The assignee and equitable and *bona fide* owner of any chose in action not negotiable heretofore or hereafter assigned, may sue thereon in his own name, and he shall in his pleading on oath, or by his affidavit, where pleading is not required, allege that he is the actual *bona fide* owner thereof, and set forth how and when he acquired title; but in such suit there shall be allowed all just set offs, discounts and defenses, not only against the plaintiff, but also against the assignor or assignors, before notice of such assignment shall be given to the defendant." Chap. 110, sec. 18, Hurd's R. S., 1909; Wabash, C. & W. Ry. Co. v. Oetting, 147 Ill. App. 179.

Appellant complied with this statute and was entitled to its provisions. The statute simply declares the principles of the common law that are applicable to suits by assignees on non-negotiable instruments,

and it changes the common law in no particular, except that at common law the suit on such an instrument by an assignee could not be brought in his name as now permitted by the statute. At common law, as declared by the late cases, the assignee of a non-negotiable instrument could sue the debtor on the instrument in the name of the assignor, and the debtor could not set off any demand he had against the assignor on any other instrument, which was not due at the time of notice of the assignment, although it became due before the suit was commenced. Hicks v. Mc-Grorty, 2 Duer (N. Y.) 295; Wells v. Stewart, 3 Barb. (N. Y.) 40; Beckwith v. Union Bank, 4 Sandf. (N. Y.) 604; Martin v. Kunzmuller, 37 N. Y. 396; Myers v. Davis, 22 N. Y. 489; Spaulding v. Backus, 122 Mass. 553; Waterman on Set-off (2nd Ed.) sec. 107; Chicago Title & Trust Co. v. Smith, 158 Ill. 417; Barker v. Barth, 192 Ill. 460.

It is clear, therefore, under the law that appellee was not entitled to set off its approximately $100,000 claim for damages or additional cost to it for the completion of the intake tunnel contract after Agnew had ceased to work on it, as it was an entirely distinct contract from the one sued on, and no such claim or set-off existed at the date that the city received notice of the assignment of the contracts to the bank. No words by the city in its receipt of the notice of the assignment could change the law or limit its liability under the law, unless assented to by appellant.

Appellee also insists that the city officers could not surrender any right or debt it had against appellant, and that it was entitled to a set-off of one hundred dollars per day for every day between December 31, 1905, and October 1, 1906, as liquidated damages for failure of appellant to complete the roof of the pumping station within the time stipulated, notwithstanding the order of the city council of October 1, 1906, directing the comptroller to waive the claim to dam-

144    APPELLATE COURTS OF ILLINOIS.

Hibernian Banking Assn. v. City of Chicago, 178 Ill. App. 138.

ages. We think there can be no question that the city had the right to make either one of the contracts in question, or to make any desired changes therein. We think also that the city had the right to make the changes in the said original contracts, and that the second contracts are based upon sufficient considerations to bind the city. It required the giving of new bonds, and made other changes in the contracts binding on Agnew, not contained in the original contracts, in consideration for the waiver of the provisions for liquidated damages in the original contracts. It was not merely the surrender for nothing of past due debts or obligations by the city to Agnew, and as the second contracts changing the original contracts were binding, there was nothing due to the city on either contract as liquidated damages by Agnew, when the assignments thereof were called to appellee's attention, and as the second contracts were cancelled before the time limits expired nothing in the way of liquidated damages ever became due on them or either of them.

Appellee also insists that it is entitled to an off-set of $1,225.42 for salaries paid by it to its engineers engaged in the supervision of the construction of the pumping station. Those engineers were city officers working for the city under stated salaries. They were simply doing their official duties, and we know of no principle by which such a set-off could be allowed, even as against Agnew in the absence of an agreement to that effect. The claim seems to be made for the additional time the engineers worked over the stipulated time for the contracts. As no such claim existed at the date of notice of the assignment of the contracts by Agnew, that is an additional reason why such claim of set-off can not be allowed against appellant as to the intake tunnel contract. As to the contract sued on, all actual damages were allowed apparently that were occasioned by Agnew's failure to

complete the contract as per stipulations. At least, there is no damage stipulated, other than those damages that have been paid, and we can not presume that there is any other damage that is the subject of recoupment in this case. We would recognize the right of recoupment on the contract sued on, if the proof showed any other damages that are the subject of recoupment. Salt Fork Coal Co. v. Eldridge Coal Co., 170 Ill. App. 268.

The judgment of the lower court should have been in favor of appellant and against appellee for the balance due on the pumping station contract. The judgment of the court is, therefore, reversed and judgment will be entered in this court in favor of appellant and against appellee for the sum of $1,103.31 and for costs.

*Judgment reversed.*